# Supreme Court of the Navajo Nation

**Mina Downey, Plaintiff-Appellee,**

v.

**Wayne Bigman, dba Bigman Stables,**
**Defendant-Appellant.**
**Decided November 9, 1995**

## OPINION

Before YAZZIE, Chief Justice, AUSTIN and CADMAN, Associate Justices.

David W. Rozema, Esq., Flagstaff, Arizona, for the Appellant; and Donald O. Loeb, Esq., Scottsdale, Arizona, for the Appellee.

Opinion delivered by AUSTIN, Associate Justice.

The Appellant, Wayne Bigman ("Bigman"), claims that the District Court abused its discretion when it overturned a jury verdict in his favor and granted the Appellee, Mina Downey ("Downey"), a new trial.

### I

On June 16, 1992, Downey fell off a horse and fractured her leg while trail riding on a tour conducted by Bigman at Monument Valley, within the boundaries of the Navajo Nation. Downey argued at trial that Bigman and his trail hands were negligent because they failed to use proper equipment, did not provide riding boots for their riders, rode too far ahead of the group, and had to retighten the cinches on Downey's saddle because they were faulty. Bigman denied negligence and presented evidence that he maintained proper equipment, was not obligated to provide boots to riders, and his trail hand did not ride too far ahead of the party and properly inspected and tightened all the saddles twice during Downey's ride as a routine safety precaution. The jury returned a verdict in favor of Bigman.

Downey filed a motion for a new trial, which the District Court granted, concluding that the jury verdict in favor of Bigman was inconsistent with the evidence, contrary to the law of negligence, and that new evidence warranted a new trial. The newly discovered evidence was an alleged additional eyewitness at the accident scene who was not identified until the second to last day of the trial.

Bigman appeals the District Court's order granting a new trial. He also seeks

to supplement the record on appeal with a post-trial affidavit of the newly discovered witness, arguing that the alleged eyewitness arrived at the scene shortly after the accident.

## II

A court may grant a new trial if the jury verdict is not supported by the evidence, is contrary to law, or if new material evidence is discovered. Nav. R. Civ. P. 59(a) (4), (8). The issue is whether the District Court abused its discretion in granting a new trial.

### A

Navajo common law is the law of preference in the Navajo Nation. *Navajo Nation v. Platero*, 6 Nav. R. 422, 424 (1991). The traditional Navajo common law doctrine that applies to jury process is Navajo participatory democracy. One of the major differences between Western principles of adjudication and Navajo legal procedure as participatory democracy is that it is essentially egalitarian. Egalitarianism is the fundamental principle of participatory democracy. The egalitarian principle is the ability of the people as a whole to make law.

Navajo participatory democracy guarantees participants their fundamental right to speak on an issue, and discussion continues until the participants reach consensus. In this sense, decisions are a product of agreement among the community rather than a select few. Status, wealth and age are not determinants of whether a person may participate in the decision-making process. Furthermore, no one is pressured to agree to a certain solution, and persuasion, not coercion, is the vehicle for prompting decisions. Participatory democracy is evident throughout many sectors of Navajo society, including government operations, the chapter meeting, and peacemaking.

We previously discussed this fundamental tradition of Navajo participatory democracy:

> In Navajo tradition, government and governing was a matter of the consensus of the people ... [t]herefore, there is a strong and fundamental tradition that any Navajo can participate in the processes of government, and no person who is not otherwise disqualified by a reasonable law can be prohibited from holding public office.

*Bennett v. Navajo Board of Election Supervisors*, 6 Nav. R. 319, 325 (1990).

The chapter meeting best illustrates this concept, because it is a continuation of traditional "family, neighborhood, and council gatherings where everyone had the opportunity to speak, and decisions were reached through consensus. We see this tradition preserved today in the chapter meeting, where disputes, plans and chapter concerns are discussed at length." *In re Estate of Ned Plummer Sr.*, 6 Nav. R. 271, 275 (1990).

A modern Navajo jury continues the fundamental tradition of community participation in the resolution of disputes through deliberation and consensus. A jury consists of members of the parties' community who bring their "experience, culture and community standards into the jury box." *Bryant v. Bryant*, 3 Nav. R. 194 (Shiprock Dist. Ct. 1981). The jury engages in deliberations, relying upon persuasion to reach consensus, to reach its verdict. These essential characteristics of a Navajo jury make it a modern expression of our longstanding legacy of participatory democracy.

A reformulation of the jury's duties to permit it to ask questions of the witnesses during trial is more reflective of Navajo participatory democracy. To maintain impartiality, all the questions will be channeled through the judge, whose authority to permit or forbid the question is discretionary. This modification of jury trials in the Navajo Nation courts is a natural step back to traditional ways and a means to secure the future. *See* Austin, ADR and the Navajo Peacemaker Court, 32 *The Judges' Journal* 8 (Spring 1993) (arguing for tribes to go "back to their own law-back to the future.").[1]

Under Navajo statutory law, the fundamental right to a jury trial in civil cases complements and enhances the traditional doctrine of participatory democracy. 7 N.T.C. § 651(Supp. 1985). In fact, the Navajo Nation courts have an established presumption in favor of jury verdicts. *General Motors Acceptance Corp. v. Bitah*, 6 Nav. R. 45 (1988). A court may set aside the jury's verdict when the evidence is insufficient, as a matter of law, to support the finding, *Wilson v. Begay*, 6 Nav. R. 1, 3 (1988); see also, *Chavez v. Tome*, 5 Nav. R. 183, 191 (1987), or when the jury is confused. *Begay v. Karty*, 5 Nav. R. 267, 269-70 (Window Rock Dist. Ct. 1987).

## B

In this case, Downey relied upon the law of other jurisdictions to assert that a judge may function as a "13th juror" to substitute his or her determination of the facts for that of the jury. Under such a standard, one person, the judge, would possess the broad authority to overturn a decision made by consensus. The Navajo principle of participatory democracy does not condone such an authoritarian practice, and this Court will not compromise the place of traditional legal principles for foreign laws.

Navajo common law dictates that a judge's discretion to set aside a jury verdict is not unchecked, but narrowly restricted to comply with participatory democracy and to preserve an individual's right to a jury trial. Accordingly, we hold that the fundamental principle of Navajo participatory democracy forbids a trial judge from acting as a "13th juror." This means that a trial judge must not substitute his or her own assessment of the facts for that of the jury. A judge should not overturn a jury verdict simply because he or she may have ruled differently.

---

1. Sometimes referred to as "The Austin Theory of Going Back to the Future." See, e..g., Gandhi Luthuli Peace Institute, "Seminar on Traditional and Modern System of Justice (Durban, South Africa, October 2, 1995) (citing the theory's theme).

This holding does not prevent a judge from overturning a jury verdict if the verdict is against "the clear weight of the credible evidence." Nav. R. Civ. P. 59(c). In this case, there was evidence upon which a jury could reasonably base its verdict in favor of Bigman. The trial record shows that Bigman's trail hand inspected and tightened the cinches on the saddles of all the riders on two occasions; that his trail hands were properly trained and provided adequate equipment; there were instructions and guidance to the riders; and the saddle did not slip, causing Downey to fall from her horse. She also signed a waiver of liability, testified that the horse was gentle, and none of the other trail riders heard her complain about the saddle slipping. Although Downey's friend testified that she saw the saddle slip when Downey fell, the friend conceded that Downey's fall could have caused the saddle to move, and witnesses for Bigman also testified that nothing was wrong with the saddle after the fall, and that there had been no history of problems with either the horse or its saddle on previous or subsequent rides.

While there was evidence in favor of Downey, the function of a jury is to weigh contradictory evidence, judge the credibility of witnesses, and draw conclusions that it deems most reasonable under the circumstances. Where there are close factual calls, the trial judge should give deference to the jury's function as fact-finder. Juries can reach different conclusions, all of which can have sufficient evidentiary support to be upheld. In this case, the facts were conflicting and there was evidence contrary to the jury verdict, but ample evidence warranted the verdict in favor of Bigman. The District Court erroneously granted a new trial when the weight of the credible evidence was not against the verdict.

## C

The finding that the verdict in favor of Bigman was not against the weight of the credible evidence necessarily implies that there was insufficient evidence to prove all the required elements of negligence. Where the plaintiff fails to meet the burden of proving that the defendant owed the plaintiff a duty, that the defendant breached that duty, and proximately caused injury to the plaintiff, the plaintiff is not entitled to recovery. *Thomas v. Succo*, 7 Nav. R. 63, 64-65 (1993); *Navajo Tribe of Indians v. Jones*, 5 Nav. R. 235, 255 (Window Rock Dist. Ct. 1986); *Mann v. The Navajo Tribe*, 4 Nav. R. 83, 84 (1983); *Cadman v. Hubbard*, 5 Nav. R. 226, 229 (Crownpoint Dist. Ct. 1986).

In this case, the District Court interpreted the jury verdict as finding Downey entirely at fault for the accident. However, it did not apportion blame to Downey, but rather found that Downey failed to prove all the elements of actionable negligence against Bigman. The District Court was wrong to apportion fault using the doctrine of comparative negligence before all the elements of negligence were proven. Downey failed to meet her burden of proof, so the verdict in favor of Bigman was proper. The doctrine of comparative negligence does not demand, nor lead inexorably to, a verdict awarding some compensation to a complaining plaintiff.

## D

The discovery of a new potential witness on the next to last day of trial does not justify a new trial. The revelation of a new witness does not necessarily mean the discovery of new evidence. Nav. R. Civ. P. 59(a) (4). Before granting a new trial, the District Court must first determine whether the new witness would offer evidence which (1) would probably change the result on a new trial; (2) was discovered since the trial; (3) would be of such a nature that it could not have been discovered before trial by due diligence; (4) was material; and (5) was not only cumulative and impeaching. *Phillips v. Farley*, 1 Nav. R. 69, 70 (1972). All five requirements must be met, and the scope of a new trial should be limited to the new evidence "unless the trial court finds that fairness and justice ... requires that there be a complete rehearing as to all the evidence." *Chavez v. Thomas*, 5 Nav. R. 32, 34 (1985).

This Court has stated since *Phillips* that the failure to identify a witness is a sufficient ground for granting a new trial. *Battese v. Battese*, 3 Nav. R. 110, 111 (1982). In *Battese*, this Court denied an appeal from an order granting a new trial because the Appellant failed to identify a witness in response to an interrogatory and then called the witness at trial. Unlike this case, however, the issue in *Battese* was whether the Appellant had proven "probable cause" for review under 7 N.T.C. § 801(a). Because the Appellant in *Battese* did not object to the interrogatory, the Court held that she did not preserve the issue for appeal. This case is distinguishable from *Battese* because the issue here is the extent of a trial court's authority to grant a new trial and not whether an act or omission of Bigman at trial preserved an issue for appeal.

Downey failed to meet her burden under the *Phillips* test. She failed to show that the testimony of the new witness would likely change the result in a new trial, be material, and not be cumulative or impeaching. Likewise, the District Court's order relied on the insufficient ground that the new witness "may or may not be able to shed any light on what happened the day of the accident." A court may not grant a new trial based on speculation, and the burden is on the party seeking a new trial to meet the requirements of the *Phillips* test. Downey failed to meet that burden.

We addressed this issue without considering the contents of Bigman's post-trial affidavit of the proposed testimony of the new witness. The affidavit was not part of the trial record and we cannot consider it on appeal. Accordingly, Bigman's motion to supplement the record on appeal is denied.

## III

For the foregoing reasons, this Court reverses the order of the Kayenta District Court granting a new trial and reinstates the jury verdict in favor of the Defendant, Wayne Bigman.